John Michael TRAGESER, Appellant,

v.

ST. JOSEPH HEALTH CENTER, Defendant,

Charles A. Clough and Neurology/Neurosurgery, P.C.,

and

Ben E. Medley and Carondelet Radiology, Inc., Respondents.

No. WD 48522.

Missouri Court of Appeals, Western District.

Sept. 13, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 1, 1994.

Application to Transfer Denied Dec. 20, 1994.

Theodore C. Beckett, III, Eric Sexton, Kansas City, for appellant.

Kirk J. Goza, Bradley D. Honnold, Kansas City, for respondents Clough and Neurology/Neurosurgery, P.C.

**636**

James Bandy, Kansas City, for respondents Medley and Carondelet Radiology, Inc.

Before KENNEDY, P.J., and BRECKENRIDGE and SPINDEN, JJ.

SPINDEN, Judge.

John Michael Trageser was rendered a paraplegic after surgery to his back. He sued his doctors, Charles A. Clough and Ben E. Medley, and their respective professional corporations, Neurology/Neurosurgery, P.C., and Carondelet Radiology, Inc., for negligently performing a thoracic laminectomy. Trageser also asserted that Clough and Medley negligently failed to inform him that a significant risk of paralysis was involved with the procedure and that they negligently diagnosed his condition.

A jury returned a verdict in favor of Clough and Medley. Trageser appeals. He asserts that the trial court erred in excluding from evidence a video tape prepared by Trageser's expert and in granting Clough's and Medley's motion for mistrial after the jury selection had been completed. We disagree and affirm the trial court's judgment.

Trageser complains first about the trial court's excluding from evidence a computer-generated video tape, prepared at the instruction of his medical expert, to illustrate how pressure changes occur within a spinal cord. Trageser asserts that the video tape would have aided the jury in understanding his medical expert's opinions.

▆ The admission or exclusion of evidence is within the sound discretion of the trial court, and the exercise of such discretion will not be set aside on appeal unless the injustice of excluding it is substantial and glaring. *State ex rel. Missouri Highway and Transportation Commission v. Pracht,* 801 S.W.2d 90, 93 (Mo.App.1990). A trial court's ruling on the admissibility of a video tape must be given great deference and will not be disturbed on appeal unless shown to be an abuse of discretion. *Beers v. Western Auto Supply Company,* 646 S.W.2d 812, 815 (Mo.App.1982); *Cryts v. Ford Motor Company,* 571 S.W.2d 683, 691 (Mo.App.1978). As the Missouri Supreme Court stated in *State*

*ex rel. Webster v. Lehndorff Geneva, Inc.,* 744 S.W.2d 801, 804 (1988):

> Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable men can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

"The issue in deciding whether to admit or reject a video tape is whether the film is 'practical, instructive and calculated to assist the jury and the court in understanding the case.'" *King v. Copp Trucking, Inc.,* 853 S.W.2d 304, 308 (Mo.App.1993) (quoting *Roque v. Kaw Transport Company,* 697 S.W.2d 254, 256 (Mo.App.1985).

▆ On the third day of trial, Trageser offered the video tape and explained to the trial court that he planned to play it during the testimony of his medical expert, Ronald Ignelzi. Trageser described the video tape to us as "a dynamic animated videotape demonstrative aid, which merely shows the condition of the spinal canal and the changes in pressure or force gradients, or changes in pressures or forces, which occur in the spinal canal during the surgical procedure, a decompressive thoracic laminectomy, performed in this case." Sections of the tape were captioned as "Dr. Clough's First Procedure," "Dr. Clough's Second Procedure," and the "Recommended Surgical Procedure." The trial court denied the offer on the grounds of improper foundation and because it showed spinal pressure points in the color red which the trial court deemed prejudicial.

In his offer of proof, Trageser said, "Plaintiff would offer testimony that would establish a foundation that [the video tape is] an accurate representation of what it represents and what it is intended to depict." This was inaccurate. Trageser acknowledges on appeal, "[The video tape] was not and did not attempt to be a recreation' of Dr. Clough's surgical procedures." The video tape, to the contrary, suggested by its headings that it was depicting how Clough performed his surgical procedures and that the pressure

changes depicted occurred in Trageser's spinal canal during the surgeries. Hence, even if the trial court's bases for excluding the tape were erroneous (and we are not so deciding), the tape was improper evidence, and Trageser suffered no prejudice from its exclusion.

Although Trageser told the trial court that he could delete any references to Clough's first procedure or "anything like that" and play the video tape for model purposes only, Trageser never attempted to introduce the exhibit in another form. The trial court ruled, "In its present form it is not admissible[.]" Yet, Trageser did not delete the captions and did not re-offer the video tape for model purposes through his expert.

"The trial court is under no obligation to sort out the admissible parts of an offer and sever from them the inadmissible and is justified in rejecting the whole offer of proof." *In re Drew,* 637 S.W.2d 772, 777 (Mo.App. 1982). We conclude the trial court did not abuse its discretion in refusing to admit the video tape into evidence.

Trageser also asserts that the trial court erred in granting Clough's and Medley's motions for mistrial after the jury selection process had been completed. During the first day of *voir dire,* Trageser's counsel had this exchange with a venire person who was an insurance salesman:

[TRAGESER'S ATTORNEY]: In [your] work with the insurance company, do you feel this would influence you in any way or cause you to be impartial one way or the other in this case?

[VENIRE PERSON]: They do happen to be profit centers for me. I have to admit that. And I've had occasions to discuss these types of cases with individual clients of mine, other cases that they were involved with or they were familiar with.

[TRAGESER'S ATTORNEY]: Cases involving medical negligence?

[VENIRE PERSON]: Litigation, right.

[TRAGESER'S ATTORNEY]: Is this discussions [sic] with doctors or with attorneys?

[VENIRE PERSON]: Doctors.

[TRAGESER'S ATTORNEY]: Okay. About-have you discussed relative merits of any particular case?

[VENIRE PERSON]: No. In general terms about their feelings towards-well, their malpractice insurance as an expense of doing business and that type of thing.

[TRAGESER'S ATTORNEY]: And that's an important issue in this case, and I want to thank you for—

[CLOUGH'S ATTORNEY]: Excuse me. I'm going to object to his reference or trying to characterize-can we approach the bench.... I've had enough of [Trageser's attorney's] questions which are completely irrelevant and designed to elicit testimony about insurance, and I'm going to object and ask that the panel be stricken, and I think his comments about what is important in this case or what is not important are irrelevant and a mischaracterization of the evidence in this case.

And it's not fair for you to come up here and try to say what's important or not important.

[TRAGESER'S ATTORNEY]: I don't disagree. It's important that he bring that information forward, is what I'm saying. Okay. I wasn't trying to say we have a malpractice issue, that is important.

[CLOUGH'S ATTORNEY]: That's what he said.

[TRAGESER'S ATTORNEY]: The way I phrased it, I intended to mean that I would think it was important that he brought that information forward, okay?

[CLOUGH'S ATTORNEY]: Important to whom?

[TRAGESER'S ATTORNEY]: Because he's discussing this with doctors. I think it is important.

THE COURT: I thought I said don't ask any more questions about medical-medicine. We have covered that from A to Z. Go to something else.

[CLOUGH'S ATTORNEY]: I want my motion ruled on then. I've made a motion that this panel be stricken.

THE COURT: Overruled.

[MEDLEY'S ATTORNEY]: For the record, I would join [Clough's attorney's]

motion for a mistrial, striking of the panel, based on the question and answer.

After *voir dire,* Clough and Medley renewed their motions for a mistrial. The trial court reviewed the transcript and granted the motions.

The next morning, trial resumed with *voir dire* of a new jury panel. Trageser fully participated in the second *voir dire.* He did not object to, or challenge, the jury selected to hear the case.

■ The granting or denial of a mistrial is within the trial court's discretion, and our review is limited to whether or not the trial court abused that discretion. *Herndon v. Albert,* 713 S.W.2d 46, 48 (Mo.App.1986). Not only do we find no basis for deeming the trial court to have abused its discretion, but, more importantly, Trageser cannot show that he was prejudiced by the trial court's granting of the mistrial. Trageser has not shown or even suggested that the second jury was improper, biased or incapable of reaching a fair verdict. Trageser's point is without merit.

The judgment of the trial court is affirmed.

All concur.